**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,    )
                          )      Case No.  1:04-cr-36-SJM
      v.                  )
                          )
MAURICE F. FOLEY         )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District J.,

Defendant Maurice F. Foley pleaded guilty to conspiracy to traffick in 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana and100 or more marijuana plants and the use and carrying of a firearm during and in relation to a drug trafficking crime.  He was sentenced to an aggregate term of 330 months' imprisonment.

Presently pending before the Court is Foley's motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  Because we conclude that the "files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), his motion will be denied.

## I.    BACKGROUND

On August 10, 2004, a grand jury sitting in this district returned a 16-count indictment against Foley and various other individuals charging them with a host of drug-related crimes.  In relevant part, the indictment accused Foley of conspiring with seven other individuals to distribute and possess with the intent to distribute more than

100 kilograms of marijuana and 100 or more marijuana plants (Count I). In addition, Foley was charged with one count of distribution and possession with intent to distribute methamphetamine (Count II), one count of using and carrying a firearm during and in relation to a drug trafficking crime (Count III), one count of possession of a firearm by a convicted felon (Count IV), one count of identity theft in connection with the drug trafficking conspiracy (Count VI), and ten counts of money laundering (Counts VII through XVI).[1]

On April 29, 2005, in accordance with a written plea agreement, Foley entered a plea of guilty to the conspiracy charge at Count I and the firearms charge at Count III. Pursuant to Paragraph 7 of the agreement, Foley agreed to waive his rights to direct appeal and collateral attack of the judgment as follows:

> 7. MAURICE FRANCIS FOLEY waives the right to take a direct appeal from his conviction or sentence under 28 U.S.C. § 1291 or 18 U.S.C. § 3742, subject to the following exceptions:
>
> (a) If the United States appeals from the sentence, MAURICE FRANCIS FOLEY may take a direct appeal from the sentence.
>
> (b) If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines, MAURICE FRANCIS FOLEY may take a direct appeal from the sentence.
>
> (c) As a condition of his guilty plea, MAURICE FRANCIS FOLEY may take a direct appeal from his conviction limited to the following issue: whether his motion to suppress was properly denied. If MAURICE FRANCIS FOLEY takes a direct appeal raising this issue and prevails in the appeal, he may withdraw his plea of guilty. If he does not take a direct appeal or does not prevail in the appeal, the plea of guilty shall stand.
>
> The foregoing reservations of the right to appeal on the basis of specified issues do not include the right to raise issues other than those specified.

---

[1] Count V of the indictment pertained only to Jeffrey Scott Artello, one of Foley's co-Defendants.

**MAURICE FRANCIS FOLEY further waives the right to file a motion to vacate sentence, under 28 U.S.C. §2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.**

(See Ex. A to Govt.'s Response to Def.'s §2255 Mot. [256-2] at pp.3-4 (emphasis added).)[2] At the time that he entered into this agreement and pleaded guilty, Foley was represented by Attorney David Schroeder.

On July 28, 2005, this Court held a sentencing hearing. After ruling on Foley's objections to the presentence investigative report, the Court determined that the total offense level under the applicable guidelines was 33 and the appropriate criminal history category was VI. Given these determinations, the suggested guideline range as to Count I was 235 to 293 months' imprisonment. As to Count III, the guideline range was 60 months of incarceration, to run consecutively to Count I.[3] Based on its consideration of the guidelines range and the relevant sentencing factors under 18 U.S.C. § 3553(a), this Court sentenced Foley to an aggregate prison term of 330 months comprised of 270 months at Count I and 60 (consecutive) months at Count III.

Foley subsequently took an appeal, claiming that this Court erred in denying his motion to suppress physical evidence and in failing to adequately articulate the reasons for its sentence. On February 27, 2007, the Third Circuit Court of Appeals affirmed Foley's conviction and sentence, *see United States v. Foley*, 218 Fed. Appx. 139 (3d

---

[2] All citations to the record herein will refer to the official CM/ECF pagination noted at the top of the referenced document rather than to the original pagination appearing internally within the referenced document.

[3] Foley's sentence was computed based upon the 2004 version of the U.S. Sentencing Guidelines.

Cir. 2007), and on May 11, 2007, Foley's Petition for Rehearing *En Banc* was denied. His petition for a writ of certiorari was later denied by the U.S. Supreme Court.

On May 22, 2008, Foley filed the instant motion, *pro se*. In it, Foley claims that Attorney Schroeder was ineffective in that he: (1) failed to challenge the Court's criminal history calculation; (2) failed to inform Foley of possible sentencing enhancements prior to his plea; and (3) failed to raise certain "meritorious claims" at time of sentencing which would have mitigated his culpability.

The Government has responded to Foley's § 2255 motion by way of two arguments. First, the Government contends that the motion is barred by virtue of Foley's waiver of his collateral review rights as set forth in the plea agreement. Second, the Government contends that Foley's substantive arguments fail because no ineffectiveness on the part of Mr. Schroeder can be demonstrated on this record.

Foley filed a reply to the Government's response and, thereafter, Attorney John Mead was appointed to represent him. Mr. Mead has since amended Foley's motion so as to incorporate a reference to *United States v. Williams*, 558 F.3d 166 (2d Cir. 2009), wherein the Second Circuit Court of Appeals held that the 5-year mandatory minimum sentence for possession of a firearm in furtherance of a drug trafficking crime did not apply to a defendant who was subject to a 10-year mandatory minimum sentence on the underlying drug trafficking crime. The Government has responded, and the matter is now ripe for adjudication.

4

## II.    DISCUSSION

A.    <u>Foley's Waiver of Collateral Review Rights</u>

We first consider the effect of the plea agreement language by which Foley

waived his right to obtain collateral review of his sentence pursuant to 28 U.S.C. §2255.

Our circuit court of appeals has said the following with respect to such provisions:

> Waivers of collateral review are valid depending on "the (1) knowing and
> voluntary nature, based on what occurred and what defendant contends, and (2)
> whether enforcement would work a miscarriage of justice." *United States v.
> Mabry*, 536 F.3d 231, 237 (3d Cir.2008).  Defendant bears the burden "of
> presenting an argument that would render his waiver unknowing or involuntary."
> *Id.*
>
> We have declined to enumerate specific instances where waivers are *per
> se* invalid and instead examine whether the waiver was knowing and voluntary in
> light of:
>
>> the clarity of the error, its gravity, its character (e.g., whether it
>> concerns a fact issue, a sentencing guideline, or a statutory
>> maximum), the impact of the error on the defendant, the impact of
>> correcting the error on the government, and the extent to which the
>> defendant acquiesced in the result.
>
> [*United States v.] Khattak*, 273 F.3d [557, 563 (3d Cir. 2001)] (internal quotations
> and alteration omitted).

*U.S. v. Padilla-Castro*, 2011 WL 1667167 at *1-2 (3d Cir. May 4, 2011).   The

miscarriage-of-justice exception, it has been said, "should be applied 'sparingly and

without undue generosity.'"  *United States v. Ligons*, 395 Fed. Appx. 916, 918 (3d Cir.

2010) (*quoting United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005)).  It should not

be used as an avenue to pursue "garden-variety claims of error."  *United States v.

Teeter,* 257 F.3d 14, 26 (1st Cir. 2001) (cited in *Watts v. United States*, 386 Fed. Appx.

245, 249 (3d Cir. July 13, 2010).

In determining whether the waiver a knowing and voluntary, we must also consider whether our plea colloquy conformed to the mandates of Rule 11 of the Federal Rules of Criminal Procedure. *United States v. McKoy*, 350 Fed. Appx. 732, 735 (3d Cir. 2009) (quoting *United States v. Mabry*, 536 F.3d 231, 239 (3d Cir. 2008)). Pursuant to Rule 11(b)(1)(N), the district court's plea colloquy must "inform the defendant of, and determine that the defendant understands, ... the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N).

Here, Foley contends that he was misled and/or coerced into entering the plea agreement by virtue of: (i) counsel's assurances that Foley would face a sentence of no more than 16 years if he pleaded guilty; (ii) counsel's representations that the sentence of Foley's co-defendant, John Kirkpatrick, would be much greater if Foley did not plead guilty; and (iii) the fact that Foley was under the effect of medications at the time of the plea hearing. Notably, Foley is not contending that his guilty plea was defective by virtue of a Rule 11 error.

Nevertheless, we independently consider the requirements of Rule 11 and conclude that the Court's colloquy did not include the requisite discussion concerning Foley's waiver of appellate and post-conviction collateral rights. Since Foley did not object at the time of his plea or sentencing to any Rule 11 error, this defect may not serve as a basis for setting aside Foley's guilty plea unless he can satisfy, in light of the whole record, that: (1) this Court committed an error, (2) that is plain or obvious, and (3) which affects his substantial rights. *United States v. Goodson*, 544 F.3d 529, 539 (3d Cir.2008) (*citing Johnson v. United States*, 520 U.S. 461, 467 (1997)). "If all three

conditions are met, an appellate court may then exercise its discretion to notice a

forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public

reputation of judicial proceedings." *Id*. (quoting Johnson, 520 U.S. at 467) (internal

quotation marks omitted). *See also McKoy*, 350 Fed. Appx. at 735.

Based on the technical violation of Rule 11 which exists here, we will assume

that the first two prongs (i.e., plain error) have been established. Yet, our inquiry does

not stop there.

Rather, we must determine whether Foley has demonstrated "that the deficient

colloquy affected his substantial rights by precluding him from knowing of and

understanding the significance of the binding … waiver in the plea agreement."

*Goodson*, 544 F.3d at 540. *See also United States v. Long*, 304 Fed. Appx. 982, 984

(3d Cir. 2008) (defendant bears the burden of persuasion with respect to whether an

alleged Rule 11 error affected his substantial rights) (citing *Goodson*, 544 F.3d at 539).

Significantly, as we have noted, Foley does not even raise such a claim in his §2255

motion, much less has he attempted to prove the point. He also made no such claim in

his direct appeal where, to the contrary, he expressed his awareness of the appellate

waiver provision but attempted to get around it by arguing to the circuit court that the

particular sentencing challenge he was raising on appeal fell within an exception to the

waiver provision.

In any event, though, the record as a whole does not support the conclusion that

the deficiencies in this Court's plea colloquy precluded Foley from knowing of and

understanding the significance of the provision waiving his post-conviction collateral

rights. At the time of his guilty plea, Foley was a thirty-two year old man with a high

school diploma equivalency who could communicate in English with his counsel, as both Foley and his attorney verified. This Court, with both counsels' agreement, found him to be competent. During the plea proceedings, the prosecutor discussed the terms of the appellate waiver provision. Although he did not recite or specifically discuss the provision that waived Foley's collateral rights under §2255, the prosecutor did recite the various exceptions to the appellate waiver language, including an exception which allowed Foley to challenge on appeal this Court's adverse ruling on his suppression motion. The fact that these exceptions -- particularly the reservation of Foley's right to challenge this Court's suppression ruling -- were written into the plea agreement suggests that they were of particular importance to Foley and specifically bargained for by him. (The importance of the suppression issue to Foley is further demonstrated by the fact that it formed his primary issue on appeal.) The fact that the prosecutor specifically discussed these exceptions to the appellate waiver clause during the plea colloquy reinforces the notion that Foley would have been aware of the impact which the plea agreement had on his ability to later attack his plea and sentence. I am persuaded that the exception in the appellate rights waiver clause preserving Foley's right to appeal this Court's suppression ruling, which was his primary challenge on appeal, demonstrates that Foley knew of the appellate waiver and its terms, and comprehended its significance.

In addition to the foregoing, the plea colloquy shows that Foley unequivocally acknowledged having read and reviewed the plea agreement before coming to court. Foley further acknowledged that he had discussed the agreement with his attorney and that he was in full agreement with all of its terms and conditions as indicated by his

signature on the document.  Importantly, the following language appears immediately above Foley's signature on the final page of the plea agreement:

> I have received this letter from my attorney, David A. Schroeder, Esquire, have read it and discussed it with him, and I hereby accept it and acknowledge that it fully sets forth my agreement with the Office of the United States Attorney for the Western District of Pennsylvania.  I affirm that there have been no additional promises or representations made to me by any agents or officials of the United States in connection with this matter.

(Govt.'s Response to Def.'s Motion under § 2255 [256-1] at p. 6.)

Based on all of the foregoing considerations, I conclude that Foley has failed to demonstrate that this Court's Rule11 error precluded him from "knowing of and understanding the significance of the binding [§ 2255] waiver in the plea agreement." *Goodson*, 544 F.3d at 540.  Thus, Foley cannot show that his substantial rights were affected by the technical violation of Rule 11(b)(1)(N).

I further conclude that Foley's substantial rights were not impaired by virtue of any of the other alleged deficiencies in the plea proceedings.  Specifically, I reject Foley's arguments that his guilty plea was rendered unknowing and/or involuntary by virtue of:  (i) his counsel's assurances that Foley would face a sentence of no more than 16 years if he pleaded guilty; (ii) counsel's representations that the sentence of Foley's co-defendant, John Kirkpatrick, would be much greater if Foley did not plead guilty; and (iii) the fact that Foley was under the effect of medications at the time of the plea hearing.[4]

---

[4] Our Circuit Court of Appeals has not yet determined whether the ineffective assistance of counsel will always, as a *per se* matter, invalidate a waiver of appellate or collateral review.  *See United States v. Padilla-Castro,* No. 09-4216, 2011 WL 1667167 at *2 (3d Cir. May 4, 2011) (citing *United States v.*

First, Foley cannot demonstrate on this record that his plea was induced by false assurances that his term of imprisonment would not exceed sixteen years. During its colloquy, this Court specifically informed Foley that Count I carried a maximum term of imprisonment of 40 years and Count III carried a mandatory minimum prison sentence of five years, consecutive to any other term of incarceration, and a maximum term of life imprisonment. Foley acknowledged his awareness of these maximum penalties. (Plea colloquy [186] at pp. 14-17.) Foley stated under oath that he was not changing his plea "under duress or complaint or unwillingly." (Id. at p. 20.) He specifically disavowed the claim that anyone had made any promises to him in order to induce his plea aside from what was stated in the plea agreement. (Id.) He was specifically advised, and indicated his understanding, that this Court would not be able to determine the advisory guideline sentencing range until after the presentence report had been completed and the government had had the opportunity to challenge the report. (Id. at p. 23.) Foley was also specifically advised and acknowledged that the Court could, under certain circumstances, decide to impose a sentence that would be more severe than that called for by the guidelines and that, in the event that the sentence was more severe than expected, Foley would still be bound by his guilty plea. (Id. at 23-24.) Under oath, Foley expressly denied that anyone had made predictions or promises to him concerning what his sentence would be, and he further denied that the Court had in any way suggested what his sentence might be. (Id. at pp. 24-25.)

---

*Shedrick,* 493 F.3d 292, 298 n. 6 (3d Cir. 2007)). Regardless, however, for the reasons discussed in this Memorandum Opinion we find no basis for finding ineffectiveness on the part of Foley's counsel.

Second, Foley cannot demonstrate on this record that his guilty plea was coerced or induced by representations that his failure to plead guilty would result in a much higher sentence for his co-Defendant, Kirkpatrick. Again, Foley specifically disavowed the idea, both at the plea hearing and in his acknowledgment on the written agreement, that his plea had been induced by promises outside of what was contained in the agreement itself. With respect to Kirkpatrick, the record reflects the following exchange concerning a letter which Foley had written prior to his change of plea:

THE COURT: Let me ask you a couple questions about the letter which I read into the record earlier. Where you indicated that in part, "I don't think we should proceed to trial when we have not exhausted our attempts to reach a plea agreement, which I still think is possible. Please understand my situation." That letter, is it accurate to say, as your lawyer informed me, was written at a time before you had an opportunity to further discuss your plea agreement with your counsel?

THE DEFENDANT: Yes, I just met with him and the other lawyer, Tim Lucas. I had all these big decisions to make like really fast, I was just kind of confused at the time.

THE COURT: All right. You're not confused now, are you?

THE DEFENDANT: No, it's all right now.

THE COURT: And the fact that you are proceeding with your change of plea today, you are not doing that under duress or complaint or unwillingly, is that correct?

THE DEFENDANT: That's correct.

THE COURT: All right. And you don't need anymore [sic] time to think about it, is that right?

THE DEFENDANT: No.

THE COURT: All right. Has anybody made any promise, other than the plea agreement, that has caused you to plead guilty today?

THE DEFENDANT: I don't know if it would be called a promise, concerning my co-defendant, he was to get reduced charges and stuff.

THE COURT: Run that by me again?

THE DEFENDANT: Concerning my co-defendant, John Kirkpatrick, there were certain things, he was going to get certain things.

THE COURT: I don't know what you're talking about, what do you mean?

11

MR. SCHROEDER: Your Honor, if I may. As I indicated to you earlier, Attorney Lucas, who represents Mr. Kirkpatrick, and myself visited with Mr. Foley Monday. And we discussed what Mr. Kirkpatrick's plea was going to be, what the stipulations of the government were going to be with respect to that. That's what Mr. Foley is referring to.

THE COURT: Okay. But is that what you were talking about, Mr. Foley?

THE DEFENDANT: Yes.

THE COURT: *But no one, whether it be a lawyer or the U.S. Attorney or anybody else in the world, has promised you anything beyond what was represented in the plea agreement, in return for your guilty plea, is that correct?*

THE DEFENDANT: *That's correct.*

(Plea Colloquy [186] at pp. 19-22 (emphasis added).) In my view, the Court's colloquy, coupled with Foley's written acknowledge on the plea agreement, was sufficient to dispel any concerns that Foley's guilty plea was induced by promises concerning how his co-Defendant, Mr. Kirkpatrick, would be treated.

Third, Foley cannot show that his plea was rendered unknowing and/or involuntary by virtue of medication that he had taken prior to entering his plea. Foley was specifically questioned on this point during the plea hearing:

THE COURT: Have you taken any drugs or medication or drunk any alcoholic beverages in the past 24 hours?

THE DEFENDANT: Just medication prescribed for me at the jail, nothing significant.

THE COURT: Well, you tell me what they are?

THE DEFENDANT: Clonopin, Benadryl –

***

THE COURT: … Do any of those medications in any way effect [sic] your ability to think clearly?

THE DEFENDANT:      No.

THE COURT: Are you now or have you recently been hospitalized or treated for narcotic addiction?

THE DEFENDANT: No.

THE COURT:  Do you understand what's happening here today?

THE DEFENDANT:  Yep.

THE COURT:  Does either counsel have any doubt about the competence of this defendant to plead guilty at this time to the charge in the Indictment; Mr. Trabold?

MR. TRABOLD:  No, your Honor.

THE COURT:  Mr. Schroeder?

MR. SCHROEDER:  No, your Honor.

THE COURT:  I find the defendant is competent to plead.

(Plea Colloquy [186] at pp. 5-6.)

Thus, during his plea colloquy, Foley specifically disavowed being under the influence of any drug that would have affected his ability to think clearly and understand the proceedings.  Moreover, the drugs that he had ingested were administered by prison staff, a fact which supports the inference that Foley's medications and dosages were appropriate.  Apart from that fact, however, this Court had the ability to observe Foley first-hand during the proceedings.  There was nothing about Foley's actions, demeanor, or manner of speaking which suggested to the Court either that he lacked the ability to fully understand the nature and consequences of his plea or that he was entering his plea involuntarily.  In addition, neither defense counsel nor the prosecutor had any concerns about Foley's competence to change his plea.  Accordingly, there is no basis to conclude that Foley's medication on the day of his guilty plea rendered the plea defective.  *See, e.g., United States v. Tuso,* No. 10-4523, 2011 WL 2516054 (3d Cir. June 24, 2011) (defendant's waiver of her right to deny the charges against her in a supervised release hearing and put the government to its burden of proof was valid notwithstanding her prior ingestion of medication, where the defendant was questioned and had specifically denied that her medications interfered with her ability to understand

13

and perceive events and had affirmed that she understood what was happening at her hearing and defendant's counsel had not doubted her client's competence to proceed).

In sum, I conclude that Foley's entry of a guilty plea in accordance with the terms of his written plea agreement, including his waiver of rights under § 2255, was undertaken knowingly and voluntarily. I further conclude that the subject waiver of collateral rights provision applies to the challenges raised in the instant §2255 motion. Finally, I conclude that enforcement of the waiver provision would not give rise to a miscarriage of justice because Foley is merely attempting to litigate "garden-variety claims" of ineffectiveness of counsel. Accordingly, Foley's substantive §2255 claims should be barred by the waiver or collateral rights provision in his written plea agreement.

B. Foley's Ineffectiveness of Counsel Claim

Even if Foley had not waived his right to bring the instant motion, however, his substantive claims fail on the merits. Foley has claimed that his conviction and sentence should be set aside because his attorney was ineffective in the following respects: (1) failing to challenge the Court's criminal history calculation; (2) failing to inform Foley of possible sentencing enhancements prior to his plea; and (3) failing to raise any meritorious claims or 18 U.S.C. §3553 factors at time of sentencing which would have mitigated his culpability.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), Foley must demonstrate that his counsel's performance "fell below an objective standard of reasonableness" and also "a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688. When the defendant has pleaded guilty, he must show that his counsel provided "information that proves to be grossly erroneous and ... that he would not have plead[ed] guilty in the absence of the erroneous information." *Meyers v. Gillis*, 142 F.3d 664, 666 (3d Cir.1998). With respect to counsel's alleged errors during the sentencing process, Foley must establish prejudice by showing that counsel's alleged ineffectiveness resulted in a longer sentence than the Court otherwise would have imposed. *See United States v. Tiggett,* 421 Fed. Appx. 253, 255 (3d Cir. April 5, 2011) (where prisoner claimed that his counsel was ineffective for failing to raise appellate challenge to prisoner's criminal history score, prisoner would have to show that his counsel's alleged errors "caused a longer sentence to be imposed"). Here, Foley cannot establish a Sixth Amendment violation in connection with either his plea or his sentence.

### (1) Counsel's Alleged Failure to Challenge the Criminal History Calculations

Foley's first claim as to the ineffectiveness of his counsel pertains to Mr. Schroeder's alleged failure to challenge two offenses contained in the presentence investigative report ("PSR"), each of which respectively contributed one point toward Foley's criminal history calculation.[5] The first challenged offense appears at Paragraph 62 of the PSR and pertains to a retail theft charge to which Foley reportedly pled guilty

---

[5] Because of the Probation and Pretrial Services Office's calculation that Foley's record warranted 13 total criminal history points, he was assigned a Criminal History Category of VI. This category VI rating, coupled with the total offense level of 33, produced an advisory guideline range of 235 to 293 months of imprisonment. Discounting either one of the offenses which Foley now challenges would have reduced his total criminal history points and resulted in a lower Criminal History Category rating, thus producing a different advisory guidelines range.

on October 27, 1992 before a magisterial district justice.  That same day, Foley was sentenced to fines and costs.  (PSR at p. 24, ¶ 62.)  According to the PSR, Foley was arrested for this offense on August 31, 1992.

Foley contends that this offense was improperly attributed to him and that he could not have committed it inasmuch as he was in jail as of August 31, 1992 serving time for a different offense.  Foley further contends that, "since his father and brother both have the first name of Maurice, … this case may have been inadvertently … placed on his NCIC rap sheet."  (Mem. of Law in Supp. of Mot. to Vacate Sentence [244] at p. 6.)  He maintains that it was apparent from the face of the PSR that he could not have committed this retail theft offense and that his counsel therefore should have challenged it.

This theory is flawed and fails to establish any ineffectiveness on the part of Foley's counsel.  As the Government points out, the fact that Foley was reportedly arrested on August 31, 1992 does not mean that the crime in question occurred on that date.  In fact, as the PSR indicates, this particular matter was commenced by the filing of a private criminal complaint for retail theft.  The private criminal complaint was filed on December 2, 1991, as is indicated on the Magisterial District Court's official Order Imposing Sentence.  (*See* Suppl. to Govt.'s Response to §2255 Mot [277].)  Thus, the criminal conduct had to have occurred on or before December 2, 1991.  Foley makes no claim that he was imprisoned as of this time frame (and it does not appear that he was), so even if Mr. Schroeder had pursued this particular challenge at the time of Foley's sentencing, there is no reason to believe it would have been successful.

Moreover, the challenged retail theft offense was listed on Foley's NCIC report, as the PSR makes clear. Because NCIC entries are based on fingerprint verification, Foley's speculation that perhaps his father or brother actually committed this crime and it got listed on his rap sheet by mistake is specious. Accordingly, Foley cannot demonstrate that Mr. Schroeder's representation in this regard fell below the constitutionally minimum standard of professionalism, nor can he show that he was prejudiced by his counsel's conduct. *See Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir.1998) (counsel cannot be ineffective for failing to raise a meritless argument).

The second challenged offense is set forth in paragraph 63 of the PSR and pertains to charges of petty larceny and criminal mischief for which Foley was reportedly arrested on July 24, 1994 in New York State and sentenced to time served. (PSR at p. 24, ¶ 63.) According to the PSR:

> Information provided by the Pomfret Justice Court, Fredonia, New York, indicates that the defendant, using the name of Joseph R. Long, was arrested by the Pomfret Town Police Department, Fredonia, New York, on July 24, 1994, and was charged with the afore-noted offenses. On that same date, he appeared in the Pomfret Justice Court and was sentenced as previously indicated.

(Presentence Report at p. 24, ¶ 63.)

As to this offense, Foley now contends that "there was absolutely no evidence to demonstrate that the individual, Joseph Long, arrested and convicted for petty larceny in Pomfret, New York was in fact Foley." (Mem. of Law in Supp. of Mot. to Vacate Sentence [244] at p. 6.) Foley maintains that the "criminal record and court papers," including the indictment, "never indicated that Long and Foley were one and the same individual or that Foley ever use the alias 'Joseph Long.'" (*Id.*) Foley insists that his

17

counsel was ineffective because he conceded the validity and use of this offense in calculating Foley's criminal history calculation rather than putting the Government to its burden of proof.

Tellingly, Foley does not claim in his papers that he actually raised this issue with Mr. Schroeder. Rather, it seems to be Foley's argument that Mr. Schroeder should have realized on his own that the Government had not established, and would not be able to prove, a connection between Foley and "Joseph R. Long."

Once again, Foley's argument is specious. For one, it is clear that Mr. Schroeder challenged the Court's use of the Pomfret, New York offense (as well as the Court's use of the retail theft offense set forth in Paragraph 62 of the PSR) in its criminal history calculation, albeit on different grounds: that is, Mr. Schroeder argued that the offenses in question were too remote to be factored into the criminal history analysis. As the Government points out, this objection by the defense was a major point of discussion during Foley's sentencing proceedings, yet Foley apparently never raised with Mr. Schroeder or with this Court the claim he is now making – that someone else besides him committed the larceny offense in question. Unlike a purely legal argument, which is uniquely within the ken of an attorney, Foley's claim of misidentification is the type of purely factual claim which was more likely to be known by him than anyone else, yet he apparently never thought to make an issue of it at the time of his sentencing. Under these circumstances, the Court would be disinclined to conclude that Mr. Schroeder's failure to discover this issue on his own amounts to constitutionally deficient legal representation.

Furthermore, it is unlikely the argument would have been successful, even if Mr. Schroeder had chosen to pursue it. Again, the Pomfret, New York offense, and the alias "Joseph R. Long" were derived from Foley's NCIC rap sheet, and verification and details of the case disposition were requested and obtained from the Pomfret Town Court. Since entries to a person's NCIC rap sheet are made pursuant to fingerprint verification, it is highly unlikely that Foley could have prevailed on his claim of mistaken identity, even if Mr. Schroeder had pursued this line of argument at time of sentencing. Foley has presented no other basis for striking the offense from his criminal history calculation other than his assumption that no connection would have been proven by the Government if the Government had been challenged on this point. Foley's argument is unpersuasive, and I therefore find no ineffectiveness on the part of Mr. Schroeder in failing to make this challenge. I also find no prejudice, because Foley has failed to show a reasonable probability that his sentencing proceeding would have turned out differently, but for his counsel's alleged errors.

### (2) Counsel's Alleged Failure to Inform of Possible Sentencing Enhancements

Foley's next claim of ineffectiveness pertains to Mr. Schroeder's alleged failure to advise him about possible sentencing enhancements. Specifically, Foley claims that he was not advised as to the possibility that he would receive a 2-point enhancement in his offense level for obstruction of justice and a 4-point enhancement for being a leader or organizer of the conspiracy. These enhancements were ultimately applied by the Court and they significantly affected Foley's advisory guideline range. Foley claims that Mr. Schroeder also failed to inform him that the enhancements could only be applied if the

19

necessary underlying facts were charged in the indictment and found to exist beyond a reasonable doubt by a jury, in accordance with *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

In addition to failing to advise him about these two enhancements, Foley claims, Mr. Schroeder also repeatedly assured him that he would not receive a sentence greater than sixteen (16) years of incarceration. Foley now contends that, had he known the true amount of jail time that he was facing, he would not have pleaded guilty and would have instead gone to trial. He claims that Mr. Schroeder's errant advice caused him to effectively waive his rights to a jury trial under *Apprendi.*

Foley further insists that, even if he had gone to trial and lost, his combined sentences would not have exceeded the 330 month aggregate sentence that he received as a result of his guilty plea. He contends that the only benefit he received as a result of his plea was a 3-point reduction for acceptance of responsibility which, he claims, was negated by the 6-point enhancements he received for his obstruction-of-justice and leadership role.

In sum, Foley claims that he "could not make an intelligent and knowing decision with regards to his plea agreement based upon counsel's failure to inform him about the enhancements, counsel's assurance that his sentence would not exceed 16 years, and counsel's failure to inform him about the limited benefits of the dismissed counts." (Def.'s Mem. of Law in Supp. of Mot. to Vacate Judgment [244] at p. 25.) All of this, he claims, resulted in an enhanced sentence, to his prejudice.

Foley's theory is misguided in several respects. First, Foley is mistaken in assuming that the enhancements could only be applied following specific findings by a

jury using the "beyond a reasonable doubt" standard.  In point of fact, this objection was

raised at the time of his sentencing by Mr. Schroeder and was rejected by this Court.

(See Sentencing Tr. [185] at pp. 65-67.)  As the law presently stands, Foley's theory is

clearly foreclosed by the Third Circuit's decision in *United States v. Grier*, 475 F.3d 556

(3d Cir.2007) (en banc).  In that case, the court of appeals affirmed the district court's

decision to apply the preponderance-of-the-evidence standard to all facts relevant to the

sentencing guidelines, stating, there could be "no question," in light of the holding in

*United States v. Booker*, 543 U.S. 220 (2005), and the reasoning of *Apprendi*, "that the

right to proof beyond a reasonable doubt does not apply to facts relevant to

enhancements under an advisory Guidelines regime."  475 F.3d at 565.  The court

reasoned that,

> [b]y excising the provisions of the United States Code requiring mandatory
> application of the United States Sentencing Guidelines, the Supreme
> Court in *Booker* altered the constitutional impact of the Guidelines.  None
> of the facts relevant to enhancements or departures under the Guidelines
> can increase the maximum punishment to which the defendant is
> exposed.  The Due Process Clause thus affords no right to have these
> facts proved beyond a reasonable doubt.

*Grier,* 475 F.3d at 565-66.  Thus, "[o]nce a jury has found a defendant guilty of each

element of an offense [ ] beyond a reasonable doubt, he has been constitutionally

deprived of his liberty and may be sentenced up to the maximum sentence authorized

under the United States Code without additional findings beyond a reasonable doubt."

*Id*. at 561 (footnote omitted).  Accordingly, "[j]udicial factfinding in the course of selecting

a sentence within the permissible range does not offend the Fifth and Sixth Amendment

rights to a jury trial and proof beyond a reasonable doubt." *id.,* and the appropriate

standard in this regard is the preponderance-of-the-evidence.  See *Grier*, 475 F.3d at

21

561 ("Under an advisory Guidelines scheme, district courts should continue to make factual findings by a preponderance of the evidence and courts of appeals should continue to review those findings for clear error.").

Foley has not argued, nor could he, that his sentence exceeds the applicable statutory maximum. Thus, this Court's manner of applying the sentencing enhancement factors was appropriate and consistent both with *Apprendi* and the mandates of due process, and Foley's counsel committed no error in failing to advise him otherwise.

Second, Foley is wrong to assume that he had nothing to lose by going to trial on the fifteen counts he was facing. More specifically, he is wrong to assume that the possible sentence he would have faced by going to trial was the same that he faced after pleading guilty. There is no reason to doubt, on this record, that the Government would have been able to prove its case against Foley, as the evidence against him was strong. Had the Government successfully proved its case, Foley would have faced the very same sentencing enhancements that were applied to him for obstruction of justice and his leadership role; those enhancements would have been applied at sentencing in the very same fashion, and based on the very same evidence that the prosecutor presented at time of sentencing, had Foley been convicted by a jury rather than by entering a guilty plea. Moreover, had Foley proceeded to trial and been convicted, he would have lost the benefit of his 3-point reduction for acceptance of responsibility. This alone would have resulted in an increased total offense level of 36.[6] Coupled with his Criminal History Category of VI, the recommended sentencing range would have been

---

[6] The Court therefore need not, and will not, determine whether a conviction on the other remaining counts would have resulted in a further increase in Foley's total offense level.

324 to 405 months, considerably higher than the range which was actually applied at his sentencing (235 to 293 months).

Third, Foley is incorrect in assuming that he can establish ineffectiveness on the part of Mr. Schroeder based upon Mr. Schroeder's alleged mistaken assurances about possible jail time. Our court of appeals has observed that "[a]ny alleged error by defense counsel in informing defendant of his sentence may be remedied by an adequate change of plea hearing." *U.S. v. Padilla-Castro*, 2011 WL 1667167 at *2 (3d Cir. May 4, 2011).

In this case, as the Government points out, Foley's plea agreement expressly stated: (1) that he faced a minimum prison sentence of ten years and a maximum possible sentence of life imprisonment; (2) that the Government could argue any sentencing issues to the Court; and (3) that there were no other agreements concerning Foley's sentence. (See Ex. A to Govt.'s Response to Def.'s §2255 Mot. [256-2] at ¶C(1)(a), ¶B(2), and p. 6.) At the plea hearing, the Court specifically questioned Foley and confirmed his understanding as to the fact that the possible sentence range for Count I was at least 5 years of incarceration, and as much as 40 years, and that the possible sentence range for Count III was not less than 5 years' and up to life imprisonment. (Change of Plea Hrg. [186] at pp. 14-16.) The Court's colloquy further established that no one had promised Foley anything regarding his sentence beyond the terms of the plea agreement and no one had made any prediction or promise to him concerning what his sentence would be. (Change of Plea Hrg. [186] at pp. 21-22, 24-25.) Foley in fact represented to the Court that he and Mr. Schroeder had "discussed what the guideline range was generally, that's it." (Id. at p. 25.) Foley also

23

acknowledged this Court's authority, in some circumstances, to render a sentence that could be more severe than that called for by the guidelines; Foley further acknowledged that, if this were to happen, it would not be grounds for Foley to withdraw his guilty plea. (Id. at 23-24.) Foley also confirmed for the Court that he had read the plea agreement, discussed it with his attorney, and was in agreement with it as indicated by his signature. (Id. at pp. 18-19.)

Under all these circumstances, the Court's plea colloquy was sufficient to ensure the voluntary and knowing nature of Foley's guilty plea, notwithstanding any misinformation which Foley may have received from his attorney concerning the terms of his sentence. Since Foley cannot establish prejudice as a result of his attorney's alleged misconduct, no Sixth Amendment violation is present here. *See United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) ("[W]e have long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted."); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir.2001) ("[A]ny alleged misrepresentations ... were dispelled when [defendant] was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum.").

To recap, in order to establish a Sixth Amendment violation of his right to counsel that would nullify his plea, Foley must show that his counsel provided "grossly erroneous" information and that, but for the erroneous information, he would not have pleaded guilty. *Padilla-Castro,* 2011 WL 1667167 at * 2 (citing *Meyers v. Gillis*, 142 F.3d 664, 666 (3d Cir. 1998)). Foley cannot satisfy this standard based on Mr. Schroeder's alleged errors in advising him about his possible sentence.

24

*(3)  Counsel's Alleged Failure to Raise Any of the "Meritorious Claims"*

Foley's third and final allegation of ineffectiveness pertains to Mr. Schroeder's alleged failure to raise various "meritorious claims" which, in Foley's view, could have produced a lower sentence.  According to Foley, Mr. Schroeder should have argued or presented evidence showing that:  Foley had achieved a high school diploma equivalency and therefore did not require a lengthy prison sentence to obtain a higher education level; Foley suffers from mental health conditions which may have accounted for some of his past criminal behavior and which would have been better addressed in a community-based treatment facility; Foley had been a drug user since the age of 14 and may have benefited from confinement to a substance abuse facility in conjunction with a lesser sentence; Foley was the product of a family environment which fostered lawlessness; Foley's crime had no identifiable victims; and Foley had forfeited large sums of cash to the Government in connection with his plea agreement which would aid the Government's fight against crime.  Absent these alleged failures by his counsel, Foley claims, there is a reasonable probability that the result of the sentencing proceedings would have been different.

Once again, Foley's claim about the alleged deficiencies in his counsel's performance lacks merit.  The short answer to this argument is that all of the information which Foley believes should have been made known to the Court in support of a lesser sentence was, in fact, made known to the Court either through the PSR, which this Court had carefully reviewed prior to the sentencing hearing, or through the arguments actually made by Mr. Schroeder at the time of the sentencing.  At the sentencing hearing, this Court outlined all of the factors set forth at 18 U.S.C. 3553(a) and indicated

25

that it had carefully considered each of those factors as well as the advisory guideline range.  The Court then articulated its reasoning for the sentence it was about to impose, noting that the case involved a large-scale drug conspiracy, that Foley was a lifelong criminal who appeared to be completely unrepentant for his crimes, and that factors such as protection of the public and deterrence were important considerations in this case.  Having noted that Father Peterson had spoken on Foley's behalf, the Court explained that its disagreement with Father Peterson as to Foley's rehabilitative potential or threat to society was "simply a reflection of the fact that Father Peterson sees the defendant through the eyes of a caring priest and friend, while I must view him, of course, simply as a judge."  (Sentencing Tr. [185] at pp. 101-02.)  The Court concluded that "a significant sentence here is not only appropriate, but necessary, to prevent this one man criminal Tsunami from continuing to roll over this community."  (*Id.* at p. 102.)  On direct appeal, the Third Circuit concluded that this Court had sufficiently articulated its reasons for the sentence that was imposed.  *United States v. Foley,* 218 Fed. Appx. 139, 144 (3d Cir. Feb. 27, 2007).

Considering all of the circumstances of the case, particularly as they pertain to legitimate sentencing considerations, there is no basis for finding Mr. Schroeder ineffective by virtue of his failure to articulate the "meritorious claims" Foley now advocates.  Simply put, the relevant information was known to and considered by this Court, and Mr. Schroeder's failure to advocate more aggressively along these lines did not make his representation constitutionally deficient.  Nor is there a reasonable probability that Foley would have obtained a shorter sentence, had Mr. Schroeder made the arguments Foley now advances.  A number of factors, as outlined by the

26

Government at the sentencing hearing, counseled against the imposition of a shorter prison sentence for Foley. Among other things, the record showed that: (i) Foley had no meaningful employment history, (ii) his criminal history was lengthy and included five adjudications of delinquency as well as twelve adult convictions; (iii) his history involved multiple probation or parole revocations; (iv) he had absconded from his parole supervision in 2002 and was a fugitive for almost three years prior to his arrest in this case; (v) he had convictions under different names; (vi) the amount of marijuana involved in this conspiracy was in the range of 700 to 1,000 kilograms, an amount which the prosecutor variously described as "enormous" and a "flood of drugs" that had been "unleas[h]ed on this community over a relative short span of time" (Sentencing Tr. [185] at p. 94); (vii) Foley had admitted to distributing methamphetamine during the course of conspiracy; (viii) Foley had possessed a gun in connection with the conspiracy while being prohibited from doing so because of his status as a convicted felon; (ix) Foley had admitted to committing identify theft during the course of the conspiracy and had used the identity of a legally blind individual whose only source of income was social security disability benefits; (x) he had admitted to laundering money in connection with the activity; and (xi) several peoples' lives had been "destroyed" because of their connection to Foley because they had lost their careers, jeopardized their retirement pensions, and/or developed drug dependencies.

In conclusion, there is no realistic possibility that Foley would have received a shorter sentence had his counsel done as Foley now argues he should have. Accordingly, Foley's ineffectiveness of counsel claim fails.

C.  Foley's Claim Based on United States v. Williams

Foley's present counsel of record has moved the Court to amend Foley's §2255

motion so as to incorporate reference to *United States v. Williams*, 558 F.3d 166 (2d

Cir. 2009).  In that case, the Second Circuit Court of Appeals held that the 5-year

mandatory minimum sentence for possession of a firearm in furtherance of a drug

trafficking crime did not apply to a defendant who was also subject to a 10-year

mandatory minimum sentence on the underlying drug trafficking crime.  Presumably, the

reference is meant to suggest that Foley's sentence as to Count III is unlawful.

To the extent Foley is still pursuing this line of argument, we find it unavailing.

First, *Williams'* holding is limited to a situation where the defendant facing a mandatory

minimum sentence under § 924(c) is also subject to a *longer* mandatory minimum

sentence on a separate drug trafficking charge that is part of the same criminal

transaction or operative facts as the § 924(c) charge.  *See* 558 F.3d at 168; *id.* at 170

(quoting the introductory clause of § 924(c)(1)(A) which imposes certain mandatory

minimum penalties, "[e]xcept to the extent that a greater minimum sentence is otherwise

provided by this subsection nor by any other provision of law").  No such facts exists

here, because the mandatory minimum sentence which Foley faced at Count I (five

years) was not greater than the five-year mandatory minimum sentence he faced at

Count III.

In any event, however, *Williams* is no longer good law in light of the Supreme

Court's recent decision in *Abbott v. United States,* --- U.S. ---, 131 S. Ct. 18 (2010).  In

that case, the Court unanimously held that defendants who are subject to a mandatory,

consecutive sentence for a conviction under 18 U.S.C. § 924(c) are "not spared from

28

that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." --- U.S. at ---, 131 S. Ct. 23. Accordingly, there is no basis for vacating Foley's sentence at Count III.

## III. CONCLUSION

Based upon the foregoing reasons, I conclude that the files and records of hits case conclusively show that Foley is entitled to no relief under 28 U.S.C. §2255. Accordingly, no evidentiary hearing is warranted, and Foley's motion to vacate his conviction and sentence will be denied.

Moreover, because Foley has failed to make a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,     )
                                  )     Case No.  1:04-cr-36-SJM
     v.                       )
                                  )
MAURICE F. FOLEY         )

# O R D E R

AND NOW, this 27th Day of September, 2011, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendant's Motion to Vacate Judgment under 28 U.S.C. § 2255 [244] shall be, and hereby is, DENIED.

Inasmuch as the Defendant has failed to make a substantial showing of the denial of any constitutional right, IT IS FURTHER ORDERED that no certificate of appealability shall issue.


                                  s/     <u>Sean J. McLaughlin</u>

                                       Sean J. McLaughlin
                                       United States District Judge


cc:    All counsel of record.